IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA
for the use and benefit of
A MOUNTAIN CONSTRUCTION, INC.,

       Plaintiff,

v.                                          No. 2:23-cv-00106-MIS-GBW

CHP SOLUTIONS, LLC and
GREAT MIDWEST INSURANCE
COMPANY,

       Defendants.

**<u>ORDER FOR JOINT STATUS REPORT</u>**

Currently pending before the Court is Defendants CHP Solutions, LLC ("CHP") and Great Midwest Insurance Company ("Great Midwest")'s "Motion for Partial Summary Judgment Concerning the NMDOT Specification Not Being Wholly Incorporated and That There Was No Wrongful Termination of the Subcontract" ("Motion"), ECF No. 36, and Brief in Support thereof, ECF No. 37, filed on March 15, 2024. Plaintiff A Mountain Construction, Inc. ("Plaintiff" or "A Mountain") responded, and Defendants replied. ECF Nos. 43, 48. Upon due consideration of the parties' submissions, the record, and the relevant law, the Court finds that further information is required on the issue of the jurisdictional status of the Fort Bayard National Cemetery. Accordingly, the Court **ORDERS** the parties to file a Joint Status Report advising the Court of their availability for an evidentiary hearing, as detailed below.

**I.    FACTUAL BACKGROUND**

This action concerns a contract between CHP and A Mountain for A Mountain to provide certain construction services at Fort Bayard National Cemetery in New Mexico. In March 2022,

CHP entered into contract number 26C78622C0021 with the Department of Veteran Affairs for construction work at Fort Bayard National Cemetery. Compl. Under Miller Act, for Breach of Contract, & on Payment Bond ("Compl.") ¶ 6, ECF No. 1. Pursuant to 40 U.S.C. § 3131, Great Midwest executed a payment bond "for the prompt payment of all persons supplying labor or materials used in the prosecution of the work." *Id.* ¶ 7. In connection with CHP's performance of contract 26C78622C0021, CHP entered into an Independent Contractor Agreement dated May 19, 2022 with A Mountain. Br. Supp. Mot. Partial Summ. J. ("Defs.' Br.") at 1 ¶ 1, ECF No. 37; Pl.'s Resp. Opp'n ("Pl.'s Br.") at 1, ECF No. 43. A true and correct copy of the Independent Contractor Agreement, hereafter referred to as the "Subcontract," is attached to Defendants' Brief as Exhibit 2, ECF No. 37-2. *See* Defs.' Br. at 1 ¶ 2; Pl.'s Br. at 1.

A Mountain performed construction work at Fort Bayard at least through October 2022. *See* Pl.'s Br. at 3 ¶ 5. The Subcontract provides that it was effective from the date of execution until October 31, 2022, and could "be extended by mutual written agreement of the Parties." Defs.' Br. at 3 ¶ 13; Pl.'s Br. at 1. On December 16, 2022, A Mountain made a demand for payment from Great Midwest under the bond for amounts allegedly owed under the contract. Compl. ¶ 13. A Mountain also made demand for payment on CHP. *Id.* ¶ 14.

## II.    PROCEDURAL BACKGROUND

A Mountain filed the instant action on February 6, 2023. *See generally* Compl. The Complaint asserts claims under the Miller Act, 40 U.S.C. § 3131, alleging violation thereof by CHP's and Great Midwest's failure to pay (Count I), *id.* ¶¶ 19-21; on the payment bond, alleging damages resulting from Great Midwest's alleged breach of the terms of the bond (Count II), *id.* ¶¶ 22-27; and for breach of contract, alleging that CHP breached the Subcontract by failing to pay amounts due and by wrongfully terminating the Subcontract (Count III), *id.* ¶¶ 28-32.

Defendant Great Midwest filed its Answer on March 14, 2023, ECF No. 5. Defendant CHP filed its Answer on April 6, 2022, ECF No. 7. On the same day CHP also filed a counterclaim for breach of contract against A Mountain, ECF No. 8, which A Mountain answered on April 20, ECF No. 13.

Both Defendants and Plaintiff moved for partial summary judgment on March 15, 2024. ECF Nos. 36, 38. On April 2, 2024, Magistrate Judge Gregory Wormuth granted Plaintiff's Motion to Compel Discovery, ECF No. 34, thus reopening discovery in this case, ECF No. 44. Accordingly, this Court gave the parties leave to withdraw their motions for summary judgment, if they so chose, and to file a new (or the same) motion for summary judgment at any time prior to May 3, 2024. ECF No. 45. A Mountain withdrew their motion on April 8 and did not re-file that or a new motion. Defendants elected not to withdraw their previously filed motion and filed their reply in support thereof on April 12, 2024. Defendants' motion is ripe as of that date.

## III.   DISCUSSION

### A.   Parties' Positions as to Choice of Law

At the outset, the Court must determine the preliminary question of what law to apply. As Defendants noted in their brief in support of their motion, Defs.' Br. at 6 n.3, the Subcontract specifies that it shall be governed by Montana law. *See* Subcontract at 8, ECF No. 37-2; ("It is the intention of the Parties to this Agreement that this Agreement and the performance under this Agreement . . . be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of Montana, without regard to the jurisdiction in which any action or special proceeding may be instituted."). Defendants' Brief cited both New Mexico and Montana law. Defs.' Br. at 6, 8. Plaintiff cited only New Mexico law in its response. Pl.'s Br. at 3-4. Neither side discussed the choice-of-law issue head-on in their summary judgment briefing. On

September 13, 2024, the Court ordered the parties to file a joint status report advising the Court of their position as to which state's law shall govern the contract, and if they disagreed, to provide a brief memorandum. ECF No. 50. The parties filed the ordered joint status report and briefs on September 19. ECF Nos. 51, 52, 53.

The Joint Status Report indicates that the parties disagree as to the law to be applied. Plaintiff's position is that the Subcontract's choice-of-law provision is unenforceable, Defendants' position is that the choice-of-law provision is valid and ought to be enforced by this Court.[1] ECF No. 51.

Plaintiff argues that the choice of law is "ineffectual" under both Montana and New Mexico law. Pl.'s Mem. Br. Regarding Choice of Law ("Pl.'s Suppl. Br.") at 2, 3, ECF No. 52. Montana, it alleges, has adopted sections 187 and 188 of the Restatement (Second) of Conflict of Laws "in determining whether there has been an effective choice of law by the parties." *Id.* at 2. Plaintiff quotes section 187(2):

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest that the chosen state in the determination of the particular issue and which, under the rule of s. 188, would be the law of the applicable state in the absence of an effective choice of law by the parties.

---

[1] Although the parties argue over whether Montana or New Mexico's law applies, neither side argues that the substantive law of the two states as relevant to the issues presented in this case is actually different—that is, actually in conflict. It is unclear to the court that this is the case. If there is no conflict, then no choice-of-law analysis is necessary. *See Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1164 (N.M. 2008) ("[W]hen the laws of the relevant states do not actually conflict, the court may avoid a conflict-of-laws analysis."); *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1262-64, 1268-70 (D.N.M. 2014).

Pl.'s Suppl. Br. at 2. Applying these principles, Plaintiff argues that the choice-of-law clause fails under both (2)(a) and (b). First, under (2)(a), Montana "has no substantial relationship to the parties or the transaction." *Id.* The contract was not formed, negotiated, or performed in Montana, and no party is a citizen of Montana. *Id.* at 2-3. Second, under (2)(b), the choice-of-law provision is contrary to the public policy of both Montana and New Mexico, Plaintiff argues, because both states have statutes specifically prohibiting and making unenforceable provisions of construction contracts for work on property in that state that make the contract subject to the laws of another state. *Id.* at 3 (first quoting Mont. Code Ann. § 28-2-2116; and then quoting N.M. Stat. Ann. § 57-28A-1). The analysis under New Mexico law "is similar to that under Montana law," because "New Mexico courts," too, "have cited with approval Section 187 of the Restatement (Second) of Conflict of Laws." *Id.* (citing *Tavarez v. AB Staffing Solutions*, 551 P.3d 857 (N.M. Ct. App. 2024)). Plaintiff concludes that the Subcontract's choice-of-law provision is unenforceable, and this Court should instead apply New Mexico law. *Id.* at 4

Defendants, by contrast, urge the Court to enforce the choice-of-law provision and apply Montana law. Defs.' Resp. Mem. Br. Regarding Choice of Law ("Defs.' Suppl. Br."), ECF No. 53. They argue that the provision is enforceable under both Montana and New Mexico choice-of-law rules. *Id.* at 1-5. In Montana, they assert, a choice-of-law provision will be ignored only if three factors are met: first, in the absence of the choice-of-law provision, Montana law would apply under section 188 of the Restatement (Second); second, Montana has a greater interest in the issue than the state chosen by the parties; and third, "applying the state law chosen by the parties would contravene a fundamental policy of Montana." *Id.* at 1-2 (quoting *Dunluck v. Assicurazioni Generali S.P.A. – UK Branch*, 590 F. Supp. 3d 1293, 1299 (D. Mont. 2022)). Defendants argue that the choice-of-law provision is *not* contrary to Montana public policy

because the Montana statute Plaintiff identifies applies only to contracts performed on land *in Montana*, which the instant contract was not. *Id.* at 2. Nor does New Mexico's analogous statute apply, they argue, for the same reason: The contract at issue was not performed on "real property in New Mexico," but was in fact performed at Fort Bayard "which is . . . subject to exclusively federal jurisdiction" as land that was ceded to the United States. *Id.* at 2-4. Thus, Defendants conclude that the choice-of-law provision is enforceable and accordingly this Court should apply Montana law. *Id.* at 4-5.

**B.   Analysis**

*1.   New Mexico's Choice-of-Law Rules*

As a general matter, a federal court sitting in diversity applies the choice-of-law rules of the forum state to determine which state's substantive law to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). This rule extends to state-law claims under a federal court's supplemental jurisdiction. *See, e.g.*, *Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007) ("When a federal court exercises supplemental jurisdiction, the federal court applies the choice-of-law rules of the forum state." (internal quotation omitted)); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997). Therefore, although this is not a diversity case, the usual rule applies for the instant parties' state-law contract claims and counterclaim. *See U.S. ex rel. Lichter v. Henke Constr. Co.*, 157 F.2d 13, 24 (8th Cir. 1946) (applying *Klaxon* rule where the action was "brought under a federal statute," but "in the nature of an action on contract and the construction of the federal statute [wa]s not involved"). Accordingly, the Court will apply New Mexico choice-of-law principles.[2]

---

[2] As an aside, the question of which jurisdiction's choice-of-law principles to apply may appear at first blush to be somewhat complicated by the fact that this dispute arises under the Court's federal question jurisdiction. *See, e.g.*, *Rapid Enters., LLC v. U.S. Postal Serv.*, No. 2:22-cv-00627-JNP-JCB, 2024 WL 2857827, at *3 (D. Utah

The New Mexico Supreme Court has previously made clear that "New Mexico follows the Restatement (First) of Conflict of Laws when analyzing choice of law issues." *Flemma v. Halliburton Energy Servs.*, 303 P.3d 814, 819 (N.M. 2013) (citing *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 775 P.2d 233, 235 (N.M. 1989)). As to contracts, however, the state Supreme Court has supplemented those rules to give respect to parties' freedom of contract. Thus, as a general matter, "New Mexico law recognizes the validity of choice of law provisions contained in contracts." *Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210, 214 (N.M. 1996). *See also Fiser v. Dell Comput. Corp.*, 188 P.3d 1215, 1218 (N.M. 2008) ("New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."); *Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1156 n.20 (D.N.M. 2018) (noting the New Mexico Supreme Court's "loose faithfulness" to the Restatement (First) and concluding that the court would enforce the contractual choice-of-law provision at issue). "However, when application of the law chosen by

---

Mar. 13, 2024) ("[T]his action arises under federal law and is not a diversity action . . . therefore presumptively requiring the application of federal common law."); *Shay v. RWC Consulting Grp.*, No. CIV 13-0140 JB/ACT, 2014 WL 3421068, at *33 n.19 (D.N.M. June 30, 2014) ("Breach-of-contract suits on federal contracts, when brought against the United States, are brought under the federal common law. When the suit does not involve the proprietary interests of the United States, however, i.e., when the United States is not a party, the Supreme Court has been more ambivalent about the proper source of law."). But this is a red herring: different sources of law may govern different claims. While federal common law may be appropriate for Plaintiff's Miller Act claim, which is the source of the Court's federal question jurisdiction (an issue the Court need not and does not decide here), the contract claims and counterclaim are creatures of state law.

    The issues presented in the instant Motion bear primarily on the contract claims and counterclaim. "Although contract claims between the various parties to a case brought under the Miller Act may be heard by the federal court hearing the Miller Act claim, the appended contract claims are governed by state, not federal, law." *Ideal Elec. Sec. Co.*, 129 F.3d at 147-48; *see also U.S. ex rel. EPC Corp. v. Travelers Cas. & Sur. Co. of Am.*, 423 F. Supp. 2d 1016, 1020 (D. Ariz. 2006). And, in any event, "in the arena of contracts, 'knowing whether federal law governs . . . does not much advance the ball[,]' . . . because there is a 'presumption that state law should be incorporated into federal common law.'" *Rapid Enters.*, 2024 WL 2857827, at *3 (quoting *United States v. Turley*, 878 F.3d 953, 956 (10th Cir. 2017)). *See also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 691-92 (2006) ("[T]he [Supreme] Court has made clear that uniform federal law need not be applied to all questions in federal government litigation, even in cases involving government contracts." (internal citation omitted)); *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 143 F.3d 502, 505 (9th Cir. 1998) ("Displacement of state law by federal common law applies only in 'few and restricted' areas.").

the parties offends New Mexico public policy, our courts may decline to enforce the choice-of-law provision and apply New Mexico law instead." *Fiser*, 188 P.3d at 1218.

New Mexico's highest court has not addressed the effect of a choice-of-law provision in a non-U.C.C. contract (like that at issue here) since *Burge* in 1996. In the meantime, as Plaintiff points out, Pl.'s Suppl. Br. at 3, the New Mexico Court of Appeals has relied on section 187 of the Restatement (Second) of Conflict of Laws on this issue. *Tavarez*, 551 P.3d at 859 ("Although we have not explicitly adopted the Restatement (Second) of Conflict of Laws (1971) to address this issue, we have previously determined that 'New Mexico would likely adopt the Restatement (Second) approach to choice of law under circumstances in which the parties had expressly chosen the law,' as occurred here." (quoting *Reagan v. McGee Drilling Corp.*, 933 P.2d 867, 869 (N.M. Ct. App. 1997))). But the state Supreme Court has not yet followed suit. *See Mosley v. Titus*, 762 F. Supp. 2d 1298, 1232 (D.N.M. 2010) (noting that while a federal district court may consider a decision of the New Mexico Court of Appeals, the court "is not bound by the Court of Appeal's decision in the same way that it would be bound by a Supreme Court decision").

The specific choice-of-law issue in the instant case is further complicated by N.M. Stat. Ann. § 57-28A-1 (the "New Mexico Construction Choice-of-Law Statute"), mentioned briefly above. The New Mexico Construction Choice-of-Law Statute, enacted in 2011, states:

> A provision of a construction contract, agreement, understanding, specification or other documentation that is made part of a construction contract for an improvement to real property in New Mexico is void, unenforceable and against the public policy of the state if the provision:
>
> > (1) makes the construction contract subject to the laws of another state; or
> >
> > (2) requires any litigation arising from the construction contract to be conducted in another state.

N.M. Stat. Ann. § 57-28A-1. Plaintiff argues that this statute evinces a public policy of the State of New Mexico that enforcement of the Subcontract's choice-of-law provision would contravene. Plaintiff appears to argue this both under the Restatement (Second) § 187(2)(b) and as a free-floating consideration. Pl.'s Suppl. Br. at 3-4. Defendants respond that the statute is inapplicable. Defs.' Suppl. Br. at 2-5.

In the absence of directly on-point caselaw, it is this Court's duty to predict how the New Mexico Supreme Court would analyze the choice-of-law question in this case, including the interaction of the New Mexico Construction Choice-of-Law Statute. *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). As discussed, the New Mexico Supreme Court has not adopted section 187 of the Restatement (Second) for all contracts generally, nor for contracts like the one at issue here. However, in *Ferrell v. Allstate Insurance Co.*, the court held that courts should utilize the principles of the Restatement (Second) for "multi-state contract class actions." 188 P.3d 1156, 1173 (N.M. 2008). The court compared the approaches of the Restatement (First) and Restatement (Second) and determined that the "rigidity of the Restatement (First) is particularly ill-suited for the complexities present in multi-state class actions," *id.*, whereas the Restatement (Second) "acknowledges the realities of modern contracts and respects party autonomy by allowing the parties to choose the law that will govern the dispute," *id.* at 1172 (citing Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971)). *Ferrell*, in combination with the Court of Appeals's opinion in *Tavarez*, suggests that the New Mexico Supreme Court would likely be guided by the Restatement (Second) principles in the instant action, though not strictly bound.

Plaintiff urges the Court to follow Restatement (Second) § 187. Assuming arguendo that this is the proper approach, Plaintiff's section 187 analysis is incomplete. Plaintiff's recitation of section 187 starts at subsection (2). Pl.'s Suppl. Br. at 2. It omits subsection (1), which states:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971). That is, if the underlying issue is one the parties could have explicitly contracted to, then the considerations of (2)(a) and (b) are irrelevant. *See, e.g.*, *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2006) (noting that under section 187(1), if the parties "could have resolved the particular issue being litigated by an explicit provision in the contract," then the choice-of-law provision applies and "there are no exceptions").

Plaintiff would likely argue that the New Mexico Construction Choice-of-Law Statute makes the choice-of-law provision an issue the parties could *not* have resolved by explicit provision; perhaps that is why it omitted subsection (1) altogether. But this misunderstands the meaning of "the particular issue" as that phrase is used in subsection (1). As the comments and illustrations to section 187 indicate, the "particular issue" refers to the underlying substantive contract law question. The Restatement gives the example of a dispute over a contract provision setting the commission rate for a trustee as the highest rate permissible under the local laws of the state provided for in the choice-of-law provision, which rate is above that allowed by the local laws of the state which would govern if not for the choice-of-law provision. Restatement (Second) of Conflict of Laws § 187 cmt. c, illus. (Am. L. Inst. 1971). In that case, the "particular issue" (commission rate above that allowed in the non-choice state) is not one the parties could have resolved explicitly. *Id.* Here, there is no indication, and no party has argued, that the

substantive contract law issues in this case are ones that the parties could not have resolved by explicit agreement. *See* Restatement (Second) of Conflict of Laws § 187 cmt. c (Am. L. Inst. 1971) (noting that issues parties can explicitly resolve generally include "rules relating to construction, to conditions precedent and subsequent, to sufficiency of performance and to excuse for nonperformance"). Thus, under a strict application of Restatement (Second) § 187(1), the Subcontract's choice-of-law provision would be given effect.

But that is not the conclusion this Court reaches. The Court declines to assume that the New Mexico Supreme Court would use a choice-of-law approach that entirely disregards an apparently on-point New Mexico statute—namely, the New Mexico Construction Choice-of-Law Statute. *Cf. Lazar v. Kroncke*, 862 F.3d 1186, 1194 (9th Cir. 2017) (addressing an Arizona statute that dictated a relevant choice-of-law rule: "We cannot conclude that an Arizona court would ignore an Arizona statute directly on point in favor of a Restatement [(Second)] analysis."). It is unlikely that the court that adopted the Restatement (Second) principles precisely for their flexibility in one context would apply those principles so rigidly in another, especially where doing so would require neglecting a New Mexico statute. *See Ferrell*, 188 P.3d at 1171-73; *cf. Elec. & Magneto Serv. Co. Inc. v. AMBAC Int'l Corp.*, 941 F.2d 660, 662 (8th Cir. 1991) ("The Restatement [(Second)] must be applied in the same manner as it would be applied by [the forum state's] courts; to the extent that [the forum state] bypasses the Restatement [(Second)]'s formal analysis, so must federal district courts sitting in [the forum state].", *abrogated on other grounds by Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189 (8th Cir. 1992).

To the contrary, the New Mexico Supreme Court has repeatedly emphasized that New Mexico public policy may overcome choice-of-law rules. *See, e.g., Flemma*, 303 P.3d at 819

(noting that "[i]f the law of a foreign jurisdiction governs, then we look to whether its application would offend a tenet of New Mexico public policy," concluding that it would in the instant case, and applying New Mexico law); *United Wholesale Liquor Co.*, 775 P.2d at 236 ("[W]hen the choice of law rule leads to the law of another state and that law is different from the law of the forum, the forum may decline to apply the out-of-state law if it offends the public policy of New Mexico."); *Fiser*, 188 P.3d at 1218. To be sure, the public policy analysis at issue here is somewhat different from the usual case; here, it is not so much that the application of Montana law would lead to *results* contrary to New Mexico public policy, but rather that the *application* of Montana law at the outset itself may violate public policy as expressed by the New Mexico Construction Choice-of-Law Statute.

This Court concludes that the New Mexico Supreme Court would likely apply the New Mexico Construction Choice-of-Law Statute as a preliminary matter, before turning to a Restatement (Second) § 187 analysis. That is, application of choice-of-law statutes operates as a sort of "step zero" in the choice-of-law analysis. Courts in other jurisdictions that (at least loosely) follow the Restatement (Second) as a general matter have used a similar approach in like circumstances. In *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, for example, the Sixth Circuit applying Michigan law first addressed whether a contractual choice-of-law provision was "a valid choice of law clause or . . . a waiver of rights which is prohibited" under a Michigan law that voided forum-selection provisions in franchise agreements. 6 F.3d 357, 360 (6th Cir. 1993). The court concluded that the choice-of-law clause was not prohibited because "[t]he statute does not expressly void choice of law provisions, and we decline to imply such a prohibition." *Id*. Only after making that initial determination that the Michigan forum selection statute did not apply did the Sixth Circuit then move to the application of choice-of-law rules, analyzing

whether the contract's choice-of-law-provision was "enforceable under Michigan choice of law rules[.]" *Id.*

Similarly, the Seventh Circuit in *Cromeens, Holloman, Sibert, Inc. v. AB Volvo* declined to give effect to a contractual choice-of-law provision as contrary to a state statute that, by its terms, applied "notwithstanding the terms, provisions, or conditions of an agreement": "We read this to mean that Maine law applies even when contracts purport to waive its protections. Maine has thus expressed a strong public policy against allowing choice-of-law provisions to prevail over state statutes[.]" 349 F.3d 376, 391 (7th Cir. 2003). *Compare id.*, *with Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996) (analyzing a choice-of-law provision under Restatement (Second) § 187(1) and reasoning that "Maryland does not insist that its Construction Trust Fund Statute be applied to all work performed in that state; the statute does not include a rule forbidding waivers," and therefore, "[b]ecause plaintiffs could have agreed by contract to surrender their rights under that law, they were free to accomplish the same thing by choosing Illinois law in gross"). Other courts have looked to choice-of-law statutes as an initial step as part of applying the forum state's choice-of-law rules. *See, e.g.*, *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, No. 95 Civ. 8136(RCC), 2000 WL 223838, at *1 (S.D.N.Y. Feb. 25, 2000) ("A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice of law rules. New York has a choice of law statute[.]" (internal citations omitted)); *Magner v. Associated Ins. Cos.*, No. CIV.A. 93-1932, 1994 WL 570178, at *3 (E.D. Pa. Oct. 17, 1994) ("[W]hen this court sits in diversity, it must apply the substantive law of the state in which it is located, including the choice of law statute."); *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989); *see also, e.g.*, *Lorad, LLC v.*

*Azteca Milling L.P.*, 670 F. Supp. 3d 470, 487-88 (N.D. Ohio 2023); *Hopkins v. Genesis FS Card Servs., Inc.*, No. 3:19-cv-00157-AC, 2020 WL 466636, at *2-3 (D. Or. Jan. 9, 2020).

The "step zero" approach also comports with and finds support in section 6 of the Restatement (Second). Section 6(1), which is part of the Introduction, instructs: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Restatement (Second) of Conflict of Laws § 6(1) (Am. L. Inst. 1971). As the commentators explain, "[t]he court must apply a local statutory provision directed to choice of law provided that it would be constitutional to do so." *Id.* § 6, cmt. a. Subsection (2) then lists the factors generally relevant to the choice of the applicable law "[w]hen there is no such [statutory] directive." *Id.* § 6(2). As with section 187, the New Mexico Supreme Court has not expressly adopted section 6; however, the court did refer to section (6)(2) (along with sections 187 and 188) in *Ferrell*, 188 P.3d at 1173. Under section 6, the Court would follow the "statutory directive" of the New Mexico Construction Choice-of-Law Statute. *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310-11 (10th Cir. 2014) (applying section 6 before turning to the Restatement sections specific to contracts); *Westcor Co. II Ltd. P'ship v. Travelers Indem. Co.*, No. 05-cv-00597-LTB-CBS, 2006 WL 1752338, at *4-5 (D. Colo. June 22, 2006) (same); *In re Peierls Family Inter Vivos Trs.*, 77 A.3d 249, 255-56 (Del. 2013) (same, but trusts); *see also In re Air Disaster at Little Rock, Ark. on June 1, 1999*, 125 F. Supp. 2d 357, 363 (E.D. Ark. 2000) (applying section 6 and finding choice-of-law statute determinative in torts action); *Jones v. Mid Am. Expositions, Inc.*, 708 F. Supp. 173, 174 (S.D. Ohio 1989) (same, in wrongful death action).

For the foregoing reasons, this Court concludes that under New Mexico's choice-of-law rules the court must first consider the applicability of the New Mexico Construction Choice-of-Law Statute before conducting an analysis guided by the Restatement (Second) § 187.

2.    *Issue as to Jurisdictional Status of Fort Bayard National Cemetery*

If the Subcontract falls within the ambit of the New Mexico Construction Choice-of-Law Statute it will end the choice-of-law analysis. Unfortunately, this initial question is not an easy one in this case. As explained below, at this stage, the Court lacks the information necessary to proceed.

Defendants argue that the New Mexico Construction Choice-of-Law Statute is inapplicable because the construction was not performed on property "in New Mexico" but rather on *federal* property subject to exclusive federal jurisdiction. Defs.' Suppl. Br. at 2-4. The Court agrees that *if* the land on which the contract was performed (namely, the Fort Bayard National Cemetery) is subject to exclusive federal jurisdiction, then the New Mexico Construction Choice-of-Law Statute does not apply. The statute has not been analyzed or interpreted by New Mexico courts. However, many states have analogous statutes, some of which have been interpreted in contexts similar to this case. Several courts have recognized that such statutes do not apply to federal land governed by exclusive federal jurisdiction. *See U.S. ex rel. J-Crew Mgmt., Inc. v. Atl. Marine Constr. Co.*, No. A-12-CV-228-LY, 2012 WL 8499879, at *2-3 (W.D. Tex. Aug. 6, 2012), *overruled on other grounds sub nom. Atl Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49 (2013); *United States ex rel. Milestone Contractors, L.P. v. Toltest, Inc.*, No. 1:08-cv-1004-WTL-JMS, 2009 U.S. Dist. LEXIS 44382, at *4-5 (S.D. Ind. May 27, 2009); *see also Ahtna Design-Build, Inc. v. Asphalt Surfacing, Inc.*, No. 3:21-cv-00228-JMK, 2022 WL 4080487, at *6 n.75 (D. Alaska Sept. 6, 2022). If the New

Mexico Construction Choice-of-Law Statute applied to a construction contract on land with exclusive federal jurisdiction, it "would amount to [New Mexico] exercising legislative jurisdiction" where it has none. *Atl. Marine*, 2012 WL 8499879, at *3. Accordingly, if jurisdiction over Fort Bayard National Cemetery is exclusively federal, then the New Mexico Construction Choice-of-Law Statute is inapposite.

But the "if" is crucial: At this stage, Defendants have not demonstrated that Fort Bayard National Cemetery is under the federal government's exclusive jurisdiction. Not all federal land is subject to exclusive federal jurisdiction. On a given tract of land, the federal government may exercise exclusive jurisdiction but for certain areas reserved by the state (partial jurisdiction); may share legislative authority with the state (concurrent jurisdiction); or may exercise no legislative power at all, having only the interest of "an ordinary proprietor," *Paul v. United States*, 371 U.S. 245, 264 (1963). The jurisdictional status of a given parcel determines the extent to which state and federal laws govern that land. If federal land is subject to exclusive federal jurisdiction, only those state laws *already existing* at the time the state surrendered sovereignty will remain in effect on that parcel; state laws enacted *after* the federal government acquired the land will not apply. *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 99 (1940); *Chi., Rock Island & Pac. Ry. Co. v. McGlinn*, 114 U.S. 542, 546 (1885). A state may retain partial jurisdiction over federal lands when ceding such lands to the federal government by reserving certain jurisdiction in the cession agreement. A state may retain jurisdiction to serve process or impose certain taxes, for example, *see Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 530 (1938), while granting the federal government exclusive jurisdiction over all other matters. When the state and federal governments exercise concurrent jurisdiction over federal land, state laws govern unless preempted by federal law pursuant to the Supremacy Clause. *See North Dakota v. United States*,

495 U.S. 423, 426, 434 (1990). Different tracts of land within the same nominal geographic location (e.g., within one national park or one military base) may be subject to differing jurisdiction. *See, e.g.*, *Paul*, 371 U.S. at 248 ("Each of the three [federal] enclaves has numerous units acquired at various times, some of which may be subject to 'exclusive' federal jurisdiction and some of which may not be.").

Defendants rest their exclusive jurisdiction argument on N.M. Stat. Ann. § 19-2-9. Defs.' Suppl. Br. at 3-4. That statute cedes exclusive jurisdiction to the United States "over all those lands now comprising the reservation of the veterans' administration facility at Fort Bayard, Grant county [sic], New Mexico," and describes the metes and bounds of that land. N.M. Stat. Ann. § 19-2-9. However, according to this Court's research, that statute is insufficient to establish the jurisdictional status of the Fort Bayard National Cemetery.[3] Relevant transfers of land appear to have taken place in the years since the enactment of Section 19-2-9 in the 1940s. Following the closure of the Veterans Administration hospital at Fort Bayard in 1965, "480 acres containing all of the hospital-era buildings, as well as some foundations of earlier buildings associated with the fort era were transferred [from the United States] to the State of New Mexico." U.S. Dep't of the Interior, National Register of Historic Places, Fort Bayard Historic District Registration Form at 5 (2002), https://npgallery.nps.gov/NRHP/GetAsset/NRHP/ 02000726_text (hereinafter Fort Bayard Registration Form). *See also* 148 Cong. Rec. S7949 (daily ed. Aug. 1, 2002) (statement of Sen. Jeff Bingaman); Pub. L. 85-98, 71 Stat. 291 (1957) (authorizing the Secretary of Agriculture to sell back portions of the former Fort Bayard Military Reservation to Central Village, New Mexico); Pub. L. 90-625, 82 Stat. 1317 (1968) (same). A

---

[3] The court may take judicial notice of government documents under Fed. R. Evid. 201(b)(2). *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1152 n.2 (10th Cir. 2020); *accord Torrens v. Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 473 (1st Cir. 2005).

portion of that land was then transferred *back* to the United States: "[I]n 1975, the state transferred 14 of the 480 acres to the United States Department of Veterans Affairs when the former Fort Bayard Cemetery was included in the newly designated Fort Bayard National Cemetery." Fort Bayard Registration Form at 5; *see also* N.M Leg. Fin. Comm., H.J.M. 8 Fiscal Impact Report (2023) ("Except for the Fort Bayard national cemetery, in 1966, the U.S. conveyed to NM the Fort Bayard military reservation in Grant County.").

## IV.   CONCLUSION

Based on the foregoing, the record is insufficient for this Court to conclude that the land at Fort Bayard National Cemetery where the Subcontract was performed is or is not subject to exclusive federal jurisdiction. *Cf. Bayview Hunters Point Residents v. Tetra Tech EC, Inc.*, No. 20-cv-01481-JD, 2021 WL 1222164, at *3 (N.D. Cal. Mar. 31, 2021) ("It is unclear if, when, and for which of these areas the federal government affirmatively accepted exclusive jurisdiction, not to mention any possible reservations of rights made by the State of California."). Whether Fort Bayard National Cemetery is subject to exclusive federal jurisdiction is determinative of whether the New Mexico Construction Choice-of-Law Statute applies in the instant case, which question in turn is critical to determining which state's law shall govern the contract issues in this action. **The Court therefore determines that an evidentiary hearing is necessary on the jurisdictional status of the land at Fort Bayard National Cemetery where the Subcontract was performed.** The parties should be prepared to present any documentary, expert, and/or other evidence they think bears on the issue of how and when the federal government acquired Fort Bayard National Cemetery and what if any jurisdictional reservations New Mexico made at that time. *See Bayview*, 2021 WL 1222164, at *3 (concluding as to issue of jurisdictional status of certain federal lands, "[i]t is very possible that the Court will need the assistance of a

professional historical or similar expert, and that an evidentiary hearing may be warranted"); *see also, e.g.*, *Willis v. Craig*, 555 F.2d 724, 726 (9th Cir. 1977) (remanding for factual findings "on the question of just how the government acquired the property" at issue).

Accordingly, within **FOURTEEN DAYS** of this Order, the Parties shall file a **Joint Status Report** that either:

1.      Proposes a minimum of three dates on which the parties are available for the aforementioned evidentiary hearing, bearing in mind the time required to research the issue and gather the requisite evidence; or

2.      Contains a joint stipulation that there is no conflict between Montana and New Mexico law on the underlying issues in this case, such that a choice-of-law analysis is unnecessary, *see supra* note 1.


_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE